**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SWETA GUPTA, *Plaintiff*, v. SIEMENS HEALTHINEERS, *et al.*, *Defendants*. | Civil Action No. 19-3833<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

In this matter, Plaintiff Sweta Gupta contends that she was wrongfully terminated from her job because of her gender and race as well as subjected to a hostile work environment. Plaintiff asserts claims against her former employer, Defendant Siemens Healthineers ("Siemens"), pursuant to the New Jersey Law Against Discrimination ("LAD"). Presently before the Court are Defendant's motion for summary judgment, D.E. 58, and Plaintiff's cross-motion to amend, D.E. 61. The Court reviewed all submissions made in support and in opposition to the motions and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).[1] For the reasons stated below, Defendant's motion for summary judgment is **GRANTED**

---

[1] The Court refers to Defendant's brief in support of its motion for summary judgment as "Def. Br." (D.E. 58-1); Plaintiff's brief in opposition to the motion for summary judgment and in support of her cross-motion as "Plf. Opp." (D.E. 61); and Defendant's reply brief as "Def. Reply" (D.E. 69). Defendant also relies on its Statement of Undisputed Material Facts ("DSOMF"), D.E. 47-1; its Reply to Plaintiff's Counter-Statement of Undisputed Material Facts, D.E. 69-1; the Certification of Christie Pazdzierski ("Pazdzierski Cert.") and supporting exhibits, D.E. 58-2; and the Certification of Eva Gannett and supporting exhibits, D.E. 58-3. Plaintiff also relies on her

**in part** and **DENIED in part**, and Plaintiff's cross-motion is **GRANTED**.

I.  **FACTUAL**[2] **AND PROCEDURAL BACKGROUND**

   A. **Factual Background**

Plaintiff, an Indian woman, was an employee at Siemens from 2009 until her termination in November 2017. PSOMF ¶ 2. When terminated, Plaintiff was the Director of Procurement and Planning ("Director"), a position she started in July 2016. PSOMF ¶ 3; DSOMF ¶ 3. As Director, Plaintiff oversaw a team of direct reports who were responsible for materials management and procurement. DSOMF ¶¶ 6-7, 9. Plaintiff was supervised by Jerome Hagedorn. *Id.* ¶ 4.

In late 2016, Plaintiff announced that she was pregnant. PSOMF ¶ 10. From Thanksgiving 2016 through New Year's Day 2017, Plaintiff took paid time off and then started maternity leave on January 9, 2017. DSOMF ¶¶ 39, 44. During her time away, Plaintiff checked in and performed work as needed. Response to DSOMF ¶¶ 39, 44; *see also* Gadhok Cert., Ex. A ("Gupta Dep.") at 38:7-13.

Plaintiff returned to work on April 14, 2017. *Id.* ¶ 47. On April 24, 2017, Hagedorn met with Plaintiff and gave her a letter (the "April 24 Letter" or "Letter") about her performance and return to work. DSOMF ¶ 48. The Letter explained that while Plaintiff was on leave, there "were

---

Counter-Statement of Undisputed Material Facts ("PSOMF"), D.E. 61-3; her Response to DSOMF, D.E. 61-2; in addition to the Certification of Raj Gadhok ("Gadhok Cert."), D.E. 61-1, and the supporting exhibits.

In addition, Defendant filed a Reply to Plaintiff's Response to DSOMF. D.E. 69-1. This is not contemplated by Local Civil Rule 56.1(a). *See* L. Civ. R. 56.1(a), Cmt. C (stating that "[n]o reply to the responding statement is permitted"). Consequently, the Court will not consider Defendant's Reply to Plaintiff's Response. *See Kumar v. Johnson & Johnson, Inc.*, No. 12-779, 2014 WL 5512549, at *1 n.1 (D.N.J. Oct. 31, 2014) (disregarding the defendant's reply to the plaintiff's response to the statement of material facts because it was not permitted by Local Civil Rule 56.1).

[2] The background facts are drawn from DSOMF, PSOMF, the Pazdzierski Cert. and supporting exhibits, and the Gadhok Cert. and supporting exhibits.

2

concerns voiced from the team and key stakeholders," and "operational impacts" from Plaintiff's work that caused manufacturing shutdowns. *See* Gadhok Cert., Ex. P. As a result, the Letter set forth initiatives and objectives that Plaintiff was expected to achieve. *Id.* With respect to concerns from the team, Siemens states that numerous employees complained about Plaintiff to Hagedorn and Carol Scribner, Siemens' former Senior Director of Human Resources. DSOMF ¶¶ 17, 25. The complaints included concerns about Plaintiff's management style, that she raised her voice and made jokes others did not find funny, and that people did not feel supported and could not get answers from Plaintiff because she was not physically present in the office. *Id.* ¶¶ 19-22.

Similar complaints continued even after Plaintiff returned from leave. In October 2017, an employee alleged that Plaintiff created a hostile work environment. DSOMF ¶¶ 63-70. Two human resources employees conducted an internal investigation into this complaint. *Id.* ¶¶ 71-72. The hostile work environment claims were not substantiated through the investigation, although human resources identified "areas of development" for Plaintiff's communication and management style. *See* Pazdzierski Cert., Ex. H. Accordingly, Defendant recommended that Plaintiff attend leadership-related courses and training. DSOMF ¶ 77-79.

Plaintiff maintains that prior to announcing her pregnancy, she was considered a top performer at work. Plaintiff believes she was an accomplished member of the regional management team with an excellent performance record. PSOMF ¶ 5. Defendant denies this, at least with respect to her performance as Director. Def. Response to PSOMF ¶ 5. As evidence of her success, Plaintiff points to her 2016 performance review. *See* Gadhok Cert., Ex. H. The review covered Plaintiff's work from October 2015 through September 2016 and was largely positive. Plaintiff's overall rating was a 7/10 and Plaintiff was noted as achieving or partially exceeding certain criteria. The review stated that Plaintiff did a good job assuming the new Director position

3

and described Plaintiff as "energetic" and having a "can-do attitude." *Id.* The review, however, noted that Plaintiff should "augment her management skills" through internal programs because she now has direct reports. *Id.* Defendant points out that the 2016 performance review only covers the first few months of Plaintiff's work in the Director position. Thus, Defendant maintains that Plaintiff's contention that she was a top performer, even as Director, is not supported by the evidence. Def. Response to PSOMF ¶ 10; *see also* Gadhok Cert., Ex. C ("Scribner Dep.") at 56:14-57:4 (explaining that there were discussions about Plaintiff's shortcomings during the 2016 performance review process).

About two weeks after receiving the Letter, and less than a month after Plaintiff returned from maternity leave, Plaintiff was accused of defecating on the office floor. There were reports of feces in an open work area, and video surveillance footage allegedly showed that Plaintiff was the only person in the area before the alleged feces appeared. PSOMF ¶ 11; DSOMF ¶ 54. This incident triggered an internal investigation, through which Plaintiff, Scribner, and another human resources employee met for approximately an hour. During the meeting, while discussing how feces could have gotten on the floor, Plaintiff states that Scribner said "[m]aybe . . . in your culture, you may not even wear panties." Gupta Dep. 211:6-13. Scribner denies making this statement. Scribner Dep. 136:10-16. Scribner, however, does not deny that whether Plaintiff wore panties did come up during the meeting because Scribner was discussing how clothing differences between men and women may have impacted the situation. *See* Gadhok Cert., Ex. J; Ex C ("Scribner Dep.") 132:24-134:1. Plaintiff was not disciplined for the incident. DSOMF ¶ 62. But even though the internal investigation was supposed to be confidential, Plaintiff was later the target of a joke involving feces. Specifically, about a month after the incident, an employee that Plaintiff supervised placed a fake poop outside of her office door and in view of other co-workers. Gupta

4

Dep. 129:2-130:12.

Plaintiff maintains that she was subjected to mistreatment at work from two additional employees; her supervisor, Jerome Hagedorn; and Keith Shirley. When Plaintiff was promoted to Director, she took over Shirley's job responsibilities. Plaintiff contends that Shirley did not like that a woman and person of color was telling him what to do. DSOMF ¶ 102. According to Plaintiff, Shirley met with Plaintiff's team without her, and screamed and yelled in meetings with Plaintiff. Plaintiff does not believe that Shirley yelled at his white, male colleagues. Gupta Dep. 62:2-21. Shirley also showed his co-workers and Plaintiff Snapchats, including one of a "rabbit face picture" that Plaintiff found offensive. DSOMF ¶ 104.

At least once, Hagedorn refused to invite Plaintiff to coffee with Shirley, and on another occasion, Hagedorn did not invite Plaintiff to a meeting that was only attended by men. Plaintiff believes that Hagedorn thought she "did not fit the bill." Gupta Dep. 70:11-71:3. Plaintiff also complained to Hagedorn about Shirley's conduct, but Hagedorn never took any action. *Id.* 72:8-24. In addition, while Plaintiff was still on maternity leave, Hagedorn contacted her about work but failed to congratulate her for the new baby. *Id.* 73:5-74:8. And as discussed, within two weeks of Plaintiff's return from maternity leave, Hagedorn met with Plaintiff about the Letter and her shortcomings at work. DSOMF ¶ 48. Finally, after Plaintiff returned from maternity leave, Shirley and Hagedorn knowingly scheduled meetings that conflicted with Plaintiff's pumping schedule. PSOMF ¶ 16; *see also* Gupta Dep. 81:6-24.

On November 21, 2017, Hagedorn met with Plaintiff and told her that Siemens was eliminating her position. DSOMF ¶ 82. Plaintiff states that she was told that she was terminated because of a reduction in force. PSOMF ¶ 22. According to Defendant, Plaintiff was terminated due to a "job elimination, based on performance." DSOMF ¶ 86; Scribner Dep. 39:24-40:4.

5

Siemens states that it eliminated Plaintiff's position because it was releasing a new product, Atellica. Because of the new product launch, Siemens decided it needed someone with a "much broader and deeper skill set" than Plaintiff. DSOMF ¶ 87. As a result, Siemens restructured the Department and upgraded Plaintiff's position one level to a "Senior Director" position. *Id.* ¶¶ 86, 88. Siemens did not eliminate any other positions through this reduction in force. PSOMF ¶ 23. Further, Siemens did not consider placing Plaintiff in a different role or location, despite her prior positive work for the company. *Id.* ¶ 27.

David Finlay, who was already a Siemens employee, assumed the newly created position. Scribner Dep. 47:1-13. Finlay is a white male. *Id.* 48:24-49:7. When Finlay started the new position, he supervised Plaintiff's former team and initially took over some of Plaintiff's responsibilities. Finley, however, was at a "higher level" than Plaintiff and had "broader experience." *Id.* 42:13-22; 48:3-12.

### B. Procedural Background

Plaintiff filed suit on January 31, 2019, asserting claims under the LAD for disparate treatment and hostile work environment due to her race and gender.[3] D.E. 1. Defendant subsequently sought leave to file a motion for summary judgment, D.E. 47, which the Court granted, D.E. 53. Defendant then filed the instant motion, seeking summary judgment on both counts of the Complaint. D.E. 58. Plaintiff opposed the motion and filed a cross-motion for leave to amend. Through the cross-motion, Plaintiff seeks leave to change the named Defendant from Siemens Healthineers to Siemens Healthcare Diagnostics, Inc. D.E. 61.

## II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no

---

[3] This Court has diversity jurisdiction over the matter pursuant to 28 U.S.C. § 1332.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. ANALYSIS

#### A. Proper Defendant

Defendant first seeks summary judgment because the named Defendant, Siemens Healthineers, is trade name, not a legal entity that is subject to suit. Def. Br. at 12-13. Plaintiff filed her cross-motion to amend in response to this argument, which seeks leave to amend the Complaint to name Siemens Healthcare Diagnostics, Inc. as Defendant. Plf. Opp. at 25-28. A motion to amend is governed by Federal Rule of Civil Procedure 15(a)(2). *See* Fed. R. Civ. P. 15(a)(2). Motions for leave to amend pursuant to Rule 15(a)(2) are liberally granted absent (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies, (4) undue prejudice to the opposing party, or (5) futility of the amendment. *Great W. Mining & Mineral Co.*, 615 F.3d at 174 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Defendant contends that Plaintiff's cross-motion should be denied due to Plaintiff's delay. Specifically, Defendant argues that despite being informed that she named an improper Defendant when first filing the Complaint, Plaintiff took no action until now, approximately three years after filing the Complaint and more than two years after the Court imposed deadline to amend. Moreover, Plaintiff failed to provide any explanation for her delay. Def. Reply at 9-10. But "only delays that are either 'undue' or 'prejudicial' warrant denial of leave to amend." *Geness v. Cox*, 902 F.3d 344, 364 (3d Cir. 2018) (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)). A delay becomes undue when it "plac[es] an unwarranted burden on the

8

court." *Cureton*, 252 F.3d at 273. Defendant does not identify how Plaintiff's proposed amendment would burden the Court, and the Court is not aware of any such burden. Further, Defendant does not contend that it would be prejudiced by the proposed amendment. Despite Plaintiff's mistaken use of a trade name, Defendant answered the Complaint, engaged in discovery, and filed the instant motion for summary judgment without issue. Consequently, Defendant fails to point to any justifiable reason to deny Plaintiff's cross-motion to amend. Plaintiff's cross-motion is granted.

In addition, because Plaintiff will file an amended complaint that names Siemens Healthcare Diagnostics, Inc. as the Defendant in this matter, Defendant's argument that summary judgment should be granted because Plaintiff seeks relief from an improper party is moot. Accordingly, Defendant's motion for summary judgment is denied on these grounds.

### B. Disparate Treatment

As discussed, Plaintiff contends that she was fired on account of her race and gender, in violation the LAD. The LAD makes it illegal

> [f]or an employer, because of the race, creed, color, national origin, ancestry, age . . . , pregnancy or breastfeeding, sex, . . . , disability . . . of any individual . . . to refuse to hire or employ or to bar or to discharge or require to retire . . . from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment[.]

N.J. Stat. Ann. § 10:5-12(a). Where a plaintiff does not present direct evidence of discrimination for a LAD claim, courts apply the three-step, burden-shifting standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under this burden-shifting framework, a plaintiff must first establish a *prima facie* case of discrimination." *Palatnik v. Home Depot, Inc.*, No. 04-1229, 2006 WL 680981, at *8 (D.N.J. Mar. 10, 2006). If a plaintiff puts forth a *prima facie* case, there is a rebuttable presumption of unlawful discrimination. To rebut this presumption at the

second step, a defendant must produce evidence of a legitimate non-discriminatory reason for its decision. *Id.* At the third step, a plaintiff must prove, by a preponderance of the evidence, that the employer's articulated reason was not the real reason for the employment action but rather was a mere pretext for discrimination. *Id.* These standards are discussed in more detail below.

1. ***Prima Facie* Case**

Defendant maintains that Plaintiff fails to establish a *prima facie* claim for gender or race discrimination. Def. Br. at 14-16. To establish a *prima facie* discrimination claim, a plaintiff must demonstrate that she (1) is a member of a designated protected class; (2) was qualified for and performing the essential functions of the job; (3) suffered termination or an adverse employment action; and (4) the adverse employment action gives rise to an inference of unlawful discrimination. *Toutelotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016); *see also Victor v. State*, 203 N.J. 383, 409 (2010). The burden of establishing a *prima facie* case is "not onerous." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010) (quoting *Tx. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Defendant assumes, "for purposes of this [m]otion only," that Plaintiff sets forth the first three elements of her *prima facie* claim. Def. Br. at 15. The Court agrees. Plaintiff is an Indian woman, PSOMF ¶ 1; was qualified for the position, *id.* ¶ 5; and in November 2017, Plaintiff was terminated, *id.* ¶ 22. Accordingly, the Court focuses on the fourth element.

Defendant maintains that Plaintiff provides no evidence demonstrating that it retained any male or non-minority employee with similar performance issues as Plaintiff or filled Plaintiff's position after her termination. Without such evidence, Defendant continues, Plaintiff fails to set forth a *prima facie* sex or race discrimination claim. Def. Br. at 15-16. "[T]he prima face case requires 'evidence adequate to create an inference that an employment decision was based on an

10

illegal discriminatory criterion.'" *Pivirotta v. Innovative Sys., Inc.*, 191 F.3d 344, 355 (3d Cir. 1999) (quoting *O'Connor v. Consol. Caterers Corp.*, 517 U.S. 308, 312 (1996)). The standard for establishing a *prima facie* claim is flexible and fact specific. *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996); *see also Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 833 (N.J. 2002) (explaining that the *McDonnell Douglas* framework "is not designed for rigid application" and "[t]he precise elements of a *prima facie* case must be tailored to the particular circumstances"). And "nothing . . . requires a gender-discrimination plaintiff to prove that he or she was . . . replaced by someone of the opposite gender." *Pivirotta*, 191 F.3d at 357. In *Pivirotta*, for example, the plaintiff met her *prima facie* burden by demonstrating that after she was fired, "an existing male employee assumed [her] duties."[4] *Id.*

Defendant relies on two case to support its argument that Plaintiff must demonstrate that her exact position was filled. Both are distinguishable. *Lula v. Network Appliance* involved alleged discriminatory hiring, which requires slightly different elements for a *prima facie* claim. *Lula*, 255 F. App'x 610, 612 (3d Cir. 2007) (explaining that in a discriminatory hiring situation, a plaintiff must establish that she was qualified and after rejection, the position remained open, and the employer continued to seek applicants). In *Clemente v. Prestige of Bergen*, No. 09-1782, 2012 WL 28784, at *3 (D.N.J. Jan. 5, 2012), the court determined that Plaintiff failed to establish the fourth element of her *prima facie* case. In *Clemente*, the evidence demonstrated that through a department restructuring, the female plaintiff and a male employee were terminated, and two other male employees were demoted. *Id.* at *3. Accordingly, the *Clemente* court determined that the

---

[4] Although *Pivirotta* addressed a Title VII gender discrimination claim, the analysis of a LAD claim "mirrors the Title VII inquiry" and is "essentially the same." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 282 n.13 (3d Cir. 2001).

plaintiff failed to "identify any male employees who were treated more favorably than her." *Id. Clemente* did not involve replacing employees.

Here, Plaintiff's exact position could not be filled because Siemens eliminated the position. DSOMF ¶ 82. In effect, Siemens seeks to use a stated restructuring as an absolute shield to a LAD case. Siemens states that it upgraded Plaintiff's former position because it required higher level work for a new product launch. *Id.* ¶¶ 83, 86. But the employee who filled the position supervised Plaintiff's former team of employees and took over some of Plaintiff's responsibilities. *See* Scribner Dep. 42:13-22; 48:3-12. Moreover, the employee who assumed the new position and Plaintiff's responsibilities is a white male. *Id.* 48:24-49:7. Again, the *prima facie* case is flexible. Thus, a reasonable jury could conclude that although it was a new position (at least on paper), Plaintiff was in fact replaced by a male.

Plaintiff also argues that there is an inference of discrimination because prior to Plaintiff announcing her pregnancy, she was a "rising star" at Siemens. Plf. Opp. at 11. Plaintiff continues that once she returned from maternity leave, numerous performance issues had seemingly developed. *Id.* at 12. Plaintiff contends that this dichotomy is sufficient to establish a *prima facie* gender discrimination claim. *Id.* Plaintiff relies on two pieces of evidence to demonstrate the perceived change in performance: her 2016 performance review and the April 24 Letter. *See id.* at 11-12.

Defendant challenges Plaintiff's use of the 2016 performance review, arguing that it "distorts the facts and is immaterial" because the review focuses on Plaintiff's performance before she became Director. Def. Reply at 3-4. But Defendant acknowledges that the 2016 review covers the first two months of Plaintiff's performance as Director. *Id.* Defendant similarly concedes that

12

one comment in the performance review addressed her new role.[5]  *Id.*  Although Defendant argues that this document is immaterial because it fails to demonstrate that Plaintiff performed acceptably in her new role, *id.* at 4, it also fails to document the performance problems that Defendant contends were prevalent.  Therefore, a reasonable jury could view the absence of positive or negative discussions of Plaintiff's two months as Director as evidence that Plaintiff was performing the new role in a satisfactory manner.  Accordingly, the document is relevant.

As to the April 24 Letter, Defendant argues that the letter cannot support any discriminatory intent because it was sent seven months prior to Plaintiff's termination, it is not a disciplinary document, and it "merely provided Plaintiff with return-to-work objectives" while communicating concerns.  Def. Reply at 4-5.  The Letter explained that while Plaintiff was on leave, there were "operational impacts" from Plaintiff's work along with complaints about Plaintiff.  *See* Gadhok Cert., Ex. P.  Plaintiff responds that the Letter was the first documentation of Plaintiff's alleged performance shortcomings.  And Plaintiff received the Letter less than two weeks after returning from maternity leave.  Based on this timing, a reasonable jury could infer discriminatory intent to Plaintiff's newly developed performance shortcomings, which ultimately resulted in Plaintiff's termination.  *See Barnes v. Office Depot, Inc.*, No. 08-1703, 2009 WL 4133563, at *7 (D.N.J. Nov. 24, 2009) (concluding that proximity of the plaintiff's pregnancy announcement and the beginning of a written disciplinary record "raises an inference of unlawful discrimination").

In sum, Plaintiff sets forth a *prima facie* gender discrimination claim.  However, Plaintiff does not identify any evidence demonstrating that her race played a role in Defendant's decision to terminate her employment.  In fact, Plaintiff focuses solely on a *prima facie* claim for gender

---

[5] The comment is that Plaintiff needed to "augment her management skills through the various Siemens programs especially now that she has direct reports."  Gadhok Cert., Ex. H.

discrimination in her opposition brief. Plaintiff, therefore, fails to set forth a *prima facie* racial discrimination claim. Consequently, summary judgment is granted to Defendant as to a race-based disparate treatment claim.

### 2. Non-Discriminatory Reason for the Adverse Employment Decision

Because Plaintiff makes out a *prima facie* case for gender discrimination, the Court turns to the second step of the *McDonnell Douglas* framework. An employer can satisfy its burden of production at the second step "by introducing evidence which, if taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision." *Martinez v. Nat'l Broad. Co.*, 877 F. Supp. 219, 228 (D.N.J. 1994). "This burden is 'relatively light.'" *Diaz v. Donahoe*, No. 10-6510, 2013 WL 85262, at *6 (D.N.J. Jan. 4, 2013) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). Moreover, an employer "need not prove that its tendered reason actually motivated its behavior." *Martinez*, 877 F. Supp. at 228 (quoting *McDonnell Douglas*, 411 U.S. at 802); *see also DiMare v. Metlife Ins. Co.*, No. 07-4268, 2008 WL 5109556, at *2 (D.N.J. Dec. 2, 2008) (explaining that an employer merely needs to "articulate" a non-discriminatory motive at the second step).

Defendant maintains that it satisfies its burden through Plaintiff's numerous documented performance deficiencies. Defendant points to, among other things, employee complaints about Plaintiff, DSOMF ¶¶ 17-23, 63; an internal investigation, following an employee's complaint, that substantiated Plaintiff's lacking management skills, *id.* ¶¶ 71-79; and stoppages on the manufacturing floor, which decreased after Plaintiff's termination, *id.* ¶¶ 12-14. With this evidence, Defendant meets its minimal burden of production because the evidence could lead to the conclusion that Plaintiff was terminated for performance problems.

### 3. Proffered Reason is Pretextual

At the third step, a plaintiff "may defeat summary judgment by pointing 'to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Diaz*, 2013 WL 85262, at *6 (quoting *Fuentes*, 32 F.3d at 764). "[I]f a plaintiff has come forward with sufficient evidence to allow a factfinder to discredit the employer's proffered justification, she need not present additional evidence of discrimination beyond her *prima facie* case to survive summary judgment." *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir. 2013).

According to Plaintiff, there are numerous inconsistencies in Defendant's reasons for her termination. Plf. Opp. at 13. For example, Plaintiff argues that the reduction in force was a pretext for wrongfully firing Plaintiff because she was a woman. Plaintiff identifies an email exchange with a draft internal document attachment that provides a business justification for Plaintiff's termination and the departmental restructuring. *Id.* at 14. In an email to Carroll Scribner that was written a week before Plaintiff's termination, an employee states that he added a second paragraph to the draft document "to frame it more as a new organizational need given the growth of the site due to Atellica."[6] Gadhok Cert., Ex. O. Critically, Plaintiff points out that her job was the *only* position that was eliminated in the reduction in force. PSOMF ¶ 23. After eliminating her position, Plaintiff continues, Defendant created a position that assumed at least some of Plaintiff's responsibilities and was filled by a white man. *Id.* ¶ 25. This evidence creates a genuine dispute of material fact as to whether Plaintiff's termination was a reduction in force or if the stated

---

[6] "It" refers to the proposed "restructure and reduction" of Plaintiff's team. *See* Gadhok Cert., Ex. O.

justification was simply a pretext to justify Plaintiff's wrongful termination. Accordingly, Defendant's motion for summary judgment is denied as to Plaintiff's gender based disparate treatment claim.

### C. Hostile Work Environment

Defendant also seeks summary judgment for Plaintiff's hostile work environment claim. For a hostile work environment claim, a plaintiff must demonstrate that there was conduct a reasonable person would consider "sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile, or offensive working environment." *Schiavo v. Marina Dist. Dev. Co., LLC*, 123 A.3d 272, 284 (N.J. Super. Ct. App. Div. 2015) (quoting *Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 453 (N.J. 1993)). A plaintiff must also establish that the conduct would not have occurred but for her protected status. *Id.*

Hostile work environment claims are evaluated "in light of all the circumstances." *Rios v. Meda Pharm., Inc.*, 252 A.3d 982, 987 (N.J. 2021) (internal quotation omitted). When assessing the sufficiency of a hostile work environment claim, "[c]ourts must consider the frequency or severity of the conduct, whether the conduct was physically threatening or humiliating, or merely an offensive utterance and whether the conduct unreasonably interfered with plaintiff's work performance." *Rich v. State*, 294 F. Supp. 3d 266, 281 (D.N.J. 2018) (quoting *Jackson v. Gannett Co.*, No. 08-6403, 2011 WL 3362154, at *5 (D.N.J. Aug. 3, 2011)). Thus, pervasive conduct may be established through "numerous incidents that, if considered individually, would be insufficiently severe to state a claim, but considered together are sufficiently pervasive to make the work environment intimidating or hostile." *Lehmann*, 626 A.2d at 455. In rare instances, a single utterance may be severe enough to support a hostile work environment claim. *Taylor v. Metzger*, 706 A.2d 685, 692 (1998) (concluding that racial insult "uttered by the chief ranking

16

supervisor" to the plaintiff, and while in the presence of another supervising officer, "were sufficient to establish the severity of the harassment"). However, "the LAD is not intended to be a general civility code for conduct in the workplace . . . . Thus, simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Mandel v. UBS/PaineWebber, Inc.*, 860 A.2d 945, 955 (N.J. Super. Ct. App. Div. 2004) (quoting *Heitzman v. Monmouth County*, 728 A.2d 297, 304 (N.J. Super. Ct. App. Div. 1999)) (internal quotations omitted). Finally, courts must apply a flexible objective standard, "focus[ing] on the harassing conduct itself and 'not its effect on the plaintiff or on the work environment.'" *Rios*, 252 A.3d at 988 (quoting *Lehmann*, 626 A.2d at 455).

Here, the Court must view the conduct at issue "from the perspective of a reasonable [Indian woman] in the plaintiff's position." *Id.* at 989. Plaintiff first focuses on the accusation that shortly after she returned from maternity leave, she defecated on the office floor. Plf. Opp. at 24. This allegation triggered an internal investigation and meeting with two human resources employees. During this meeting, Plaintiff said something along the lines of how would I even been able to defecate in the hallway and Scribner said "[m]aybe . . . in your culture, you may not even wear panties." Gupta Dep. 211:6-13. Defendant denies that this comment occurred. Scribner Dep. 136:10-16. But Scribner does not deny that whether Plaintiff wore panties came up and that Scribner discussed how clothing differences between men and women may have impacted the situation. *See* Gadhok Cert., Ex. J; Scribner Dep. 132:24-134:1. In addition, even though the internal investigation was supposed to be confidential, Plaintiff was later the target of a joke about the incident. *See* Gupta Dep 129:2-130:12.

The conduct of co-workers may contribute to Plaintiff's hostile work environment claim. According to Plaintiff, Shirley met with her team without her and also screamed and yelled in

17

meetings with Plaintiff. Plaintiff does not believe that Shirley yelled at his white, male colleagues. Gupta Dep. 62:2-21. Finally, Shirley showed Plaintiff and other co-workers Snapchats, including one of a "rabbit face picture" that Plaintiff found offensive. DSOMF ¶ 104.

Plaintiff also attributes discriminatory conduct to Hagedorn, Plaintiff's supervisor. DSOMF ¶ 4. The alleged discriminatory behavior includes that on at least one occasion, Hagedorn refused to invite Plaintiff to coffee with Shirley, and on another occasion, Hagedorn did not invite Plaintiff to a meeting that was only attended by men. Gupta Dep. 70:11-71:3. Plaintiff also complained to Hagedorn about Shirley's conduct, but Hagedorn never took any action. *Id.* 72:8-24. In addition, within weeks after giving birth and while on maternity leave, Hagedorn reached out to Plaintiff about work and never congratulated her on the new baby. *Id.* 73:5-74:8. And about ten days after Plaintiff returned from maternity leave, Hagedorn gave Plaintiff the Letter that first identified shortcoming in Plaintiff's performance. DSOMF ¶ 48. Finally, after her maternity leave, Shirley and Hagedorn scheduled meetings that conflicted with Plaintiff's pumping schedule. PSOMF ¶ 16; *see also* Gupta Dep. 81:6-24.

Defendant argues that this conduct has "absolutely nothing to do with Plaintiff's sex or race." Def. Br. at 25. As a result, Defendant contends that Plaintiff's hostile work environment claim must be dismissed as a matter of law. *Id.* The Court disagrees, Plaintiff provides sufficient evidence through which a reasonable jury could conclude that Plaintiff's co-workers' actions were motivated by her gender and/or race.[7] For example, Plaintiff contends that Shirley and Hagedorn

---

[7] At the same time, certain of Plaintiff's allegations do not appear pertinent to a hostile work environment claim. For example, Hagedorn's failure to congratulate Plaintiff on the birth of her child may have been impolite but Plaintiff has not pointed to any authority indicating that it could support a hostile work environment finding. Similarly, the Letter appears relevant to Plaintiff's LAD claim, but Plaintiff has not sufficiently demonstrated how it proves her hostile work environment action.

knowingly scheduled meetings to conflict with Plaintiff's pumping schedule after maternity leave.

Defendant also contends that the identified conduct is not sufficiently severe or pervasive. *Id.* at 26-28. The identified conduct began when Plaintiff started as Director and continued over a multi-month time frame. In viewing the conduct as a whole, the Court cannot conclude as a matter of law that Plaintiff did not face pervasive mistreatment from her co-workers. Plaintiff identified conduct that allegedly undermined her ability to perform her position, such as not being able to attend meetings or trust that her complaints would be appropriately addressed or considered, and was ultimately terminated because of performance issues. Moreover, Plaintiff's supervisor and a Senior Human Resources director are allegedly involved in the mistreatment. "[I]nvidious harassment by a supervisor can have a greater impact than misconduct by fellow employees." *Rios*, 252 A.3d at 988. Accordingly, a reasonable jury could determine that this conduct was sufficiently pervasive to amount to a hostile work environment for a reasonable Indian woman.

Defendant's motion for summary judgment, therefore, is denied with respect to the hostile work environment claim.

## IV. CONLCUSION

For the reasons stated above, Defendant's motion for summary judgment (D.E. 58) is **GRANTED in part** and **DENIED in part**. In addition, Plaintiff's cross-motion to amend (D.E. 61) is **GRANTED**. An appropriate Order accompanies this Opinion.

Dated: March 17, 2022

_____
John Michael Vazquez, U.S.D.J.